MAINE CENTRAL INSTITUTE *vs.* INHABITANTS OF PALMYRA.

Somerset.    Opinion, February 11, 1943.

*Fred H. Lancaster,* for the plaintiff.

*Locke, Campbell & Reid,* for the defendants.

Sitting: Sturgis, C. J., Thaxter, Hudson, Manser, Murchie, Chapman, JJ.

Hudson, J. Report on agreed statement of facts. The plaintiff seeks to recover tuition for instruction of four students whose parents' residences then were in the town of Palmyra. The Maine Central Institute is located in the town of Pittsfield which adjoins Palmyra. Also adjoining Palmyra, which has no high school, are the towns of Hartland and Newport.

The town of Palmyra "At its annual town meeting March 3, 1941, acting on an appropriate article therefor contained in the warrant . . . authorized its Superintending School Committee to contract with and pay the Superintending School Committee of the adjoining town of Newport and the Trustees of Hartland Academy located in the adjoining town of Hartland, respectively, for the schooling of pupils from Palmyra in the studies contemplated by Sec. 83 of Chap. 19, R. S. [1930] above-mentioned, viz: high school education for the school year 1941-42."

Contracts so authorized were executed, and during the school year of 1941-42 Palmyra's high school pupils, excepting the four whose tuition is in controversy here, attended either Hartland Academy or the high school in Newport.

Upon the making of the contracts, "The students, their parents, and Maine Central Institute were seasonably notified of the provision made by Palmyra for schooling of its pupils at Newport High School and Hartland Academy. . . ." But, nevertheless, the parents of these four students sent their children to the plaintiff Institute "over the protest by Pal-

myra that it had made provision for such students at Hartland Academy and Newport High School. . . ."

The plaintiff bases its right to recover on Sec. 93, Chap. 19, R. S. 1930, which in pertinent part reads as follows:

"Any youth who resides with a parent or guardian in any town which does not support and maintain a standard secondary school may attend any approved secondary school to which he may gain entrance by permission of those having charge thereof, . . . and in such case the tuition of said youth, not to exceed one hundred dollars annually for any one youth, shall be paid by the town in which he resides as aforesaid. . . ."

Palmyra bases its defense on Sec. 92, Chap. 19, R. S. 1930, which in pertinent part reads:

"Any town which does not maintain a free high school of standard grade may, from year to year, authorize its superintending school committee to contract with and pay the superintending school committee of any adjoining town or the trustees of any academy located within such town or in an adjoining town, for the schooling of pupils within said town in the studies contemplated by section eighty-three of this chapter. . . . When a town has made a contract as provided for in this section, the tuition liability of said town shall be the same as if a free high school were maintained in accordance with section eighty-three of this chapter, and the expenditure of any town for schooling of pupils as provided in this section shall be subject to the same conditions and shall entitle such town to the same state aid as if it had made such expenditure for a free high school."

Sec. 93 had its origin in Chap. 68, P. L. 1903, which so far as material to the question here raised is substantially the same as the present Sec. 93.

Sec. 92 originated in Sec. 7, Chap. 124, P. L. 1873, and then read in material part as follows:

"Any town may from year to year authorize its super-intending school committee to contract with and pay the trustees of *any academy in said town,* for the tuition of scholars within such town, in the studies contemplated by this act, under a standard of scholarship to be established by such committee. . . ." (Italics ours.)

Said Sec. 7 is found later in Sec. 34, Chap. 11, R. S. 1883, and in Sec. 62, Chap. 15, R. S. 1903, in substantially the same language. But on March 11, 1905, Sec. 62 of Chap. 15, R. S. 1903, was amended (see Sec. 13, Chap. 48, P. L. 1905), per-mitting the contract to be made also "with the school board of any adjoining town," and on March 25, 1911 (see Chap. 88, P. L. 1911), Sec. 62 of Chap. 15, R. S. 1903, as amended by Chap. 48, P. L. 1905, was repealed and in substitution thereof a new Sec. 62 was enacted whereby the contract could be made with "the superintending school committee of any ad-joining town or the trustees of any academy located within such town or in an adjoining town."

The defendants' contention is that after these amendments of 1905 and 1911, a child residing with his parent in a town without a high school had no right to attend an outside school at the expense of the town for tuition unless the town failed to contract as provided in Sec. 92. The question then is whether said amendatory acts of 1905 and 1911 impliedly amended the then law, now appearing in Sec. 93.

That these sections, 92 and 93, refer to the same subject matter there is no question. It is well settled in this state that in construing different statutes all statutes on one subject are to be viewed as one and such a construction be made as will as nearly as possible make all the statutes dealing with the one subject consistent and harmonious. *Inhabitants of Turner* v. *Lewiston,* 135 Me., 430, 433, 198 A., 734; *Belfast* v. *Bath,* 137 Me., 91, 15 A. (2d), 249.

For cases dealing with an implied amendment or repeal of an earlier by a later statute, see *Thayer et al.* v. *Seavey*, 11 Me., 284, 286; *State* v. *Woodward*, 34 Me., 293, 295; *Pratt* v. *Atlantic & St. Lawrence Railroad Company*, 42 Me., 579, 587; *Mace* v. *Cushman*, 45 Me., 250, 260; *Jackman* v. *Garland*, 64 Me., 133, 135; *Knight* v. *Aroostook Railroad*, 67 Me., 291, 293; *Holmes* v. *French*, 68 Me., 525, 527; *Smith* v. *Sullivan*, 71 Me., 150, 153; *Staples* v. *Peabody*, 83 Me., 207, 210, 22 A., 113; *Thompson* v. *Lewis*, 83 Me., 223, 226, 22 A., 104; *Starbird* v. *Brown*, 84 Me., 238, 240, 24 A., 824; *Bradford* v. *Hawkins*, 96 Me., 484, 486, 52 A., 1019; *Stoddard* v. *Crocker*, 100 Me., 450, 453, 62 A., 241; *Eden* v. *Southwest Harbor*, 108 Me., 489, 493, 494, 81 A., 1003; *Jumper* v. *Moore*, 110 Me., 159, 161, 85 A., 485; *Bass* v. *City of Bangor*, 111 Me., 390, 394, 89 A., 309; *Veitkunas* v. *Morrison*, 114 Me., 256, 258, 95 A., 947; *Chase* v. *Scolnik*, 116 Me., 374, 377, 102 A., 74; and *State of Maine* v. *Carey*, 136 Me., 47, 50, 1 A. (2d), 341.

In the leading and much cited case of *Starbird* v. *Brown*, supra, it is stated on page 240, 84 Me., page 824 of 24 A.:

"But the precedents are numerous in support of a general rule which is applicable when it is claimed that one statute effects the repeal of another by necessary implication.

"The test is whether a subsequent legislative act is so directly and positively repugnant to the former act, that the two cannot consistently stand together. Is the repugnancy so great that the legislative intent to amend or repeal is evident? Can the new law and the old law be each efficacious in its own sphere?"

Again, in *Jumper* v. *Moore*, supra, it is stated on page 161 of 110 Me., page 486 of 85 A.:

"It is, however, a well recognized principle, that where a new legislative act covers the same subject matter as an existing statute, and the two are so plainly repugnant

and inconsistent that they cannot stand together, the old statute is to be regarded as amended by the new so as to become conformable thereto."

Implied amendment or repeal of an earlier statute by a later one rests "on the reasonable inference that the legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law." *Knight* v. *Aroostook Railroad,* supra, on page 293.

Then can Sections 92 and 93 consistently stand together? Is there a repugnancy so great that the legislative intent to amend or repeal is evident? Following the amendments of 1905 and 1911, Palmyra had a legislature-granted right, as did every other town, to vote to authorize its school committee to contract for outside instruction of its high school pupils in any approved high school or academy in any adjoining town. Did the legislature, however, intend to give a town this right and at the same time intend to leave with the child the right to attend any outside approved school in the state to which he might gain entrance and make the town pay for tuition? We think not. Such intentions would clearly spell absolute repugnancy.

Counsel for the defendants well state in their brief:

"If section 93 means what the plaintiff says it does, then we can see no reason for section 92 at all. It should have been repealed. What good to a town is section 92 authorizing it to contract for the stated purposes if the students now have the right to attend what school they wish without the consent or permission of their own town's school committee?"

The amendments of 1905 and 1911, because of direct and positive repugnancy to the then existing law (now Sec. 93), impliedly amended it, so that thereafter, if a legal contract were made under now Sec. 92, a youth who resides with his parent or guardian in a town which has no high school could not at the town's expense for tuition attend an outside school to which he might gain entrance, but if no such contract were made, he would have that right. Very likely the predecessor statute of the present Sec. 93 was not repealed outright because of the right of the child therein remaining in the event no contract were made.

Finally, the plaintiff contends "that the town of Palmyra could not contract with schools in two of the adjoining towns to the exclusion of the school in the third adjoining town." But there is no such express limitation in the statute nor is there reason for implying such. The town votes the authority to the school committee and then it is for that committee to exercise sound discretion as to the making of the contract or contracts. It might well be to the great convenience of the students so far as travel is concerned to attend schools in two or three adjoining towns and if so, it would be very proper for the committee in the exercise of its discretion to make more than one contract. Probably herein there is such an example, for Hartland is located westerly of Palmyra while Newport is easterly therefrom. We cannot conceive that the legislature intended to make this impossible of accomplishment. Certainly the statutory language does not prevent it.

*Judgment for defendants.*