MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:    2019 ME 115
Docket:      Yor-18-518
Argued:      June 12, 2019
Decided:     July 18, 2019

Panel:       SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

## THORNTON ACADEMY et al.

v.

## REGIONAL SCHOOL UNIT 21 et al.

GORMAN, J.

[¶1]  Regional School Unit 21 and the Board of Regional School Unit 21 (collectively, RSU 21) appeal from a judgment entered by the Superior Court (York County, *Douglas, J.*) on a complaint filed by Thornton Academy and residents of Arundel[1] in connection with RSU 21's decision not to allow Arundel middle school students to attend Thornton Academy at public expense.  RSU 21 contends that the court misinterpreted 20-A M.R.S. § 1479 (2018) to allow

---

[1]  Aside from Thornton Academy, the plaintiffs are thirty-one Arundel residents who are parents or guardians of school-age children: Ken Levesque, Angie Levesque, Pam Roche, Dan Roche, Diane C. Robbins, Melissa Whall, Nicholas LeBlanc, Michelle LeBlanc, Erica Brochu, Luke Brochu, Noel Holmes, Judite Holmes, Sara-Kate Beaulieu, Jesse Carll, Wendy Carll, Darrel Speed, Meredith Speed, Scott Lilly, Jane Lilly, Kevin Mackell, Salena Mackell, Jeff Martel, Carrie Martel, Robert Mills, Mike Pelletier, Tammy Pelletier, E. Paul Raymond, Kyle Shaw, Kelly Shaw, Michael Woods, and Jaye Woods.

2

middle school students who live in Arundel to attend Thornton Academy at public expense.  We affirm the judgment.

## I. BACKGROUND

[¶2]  On April 6, 2016, Thornton Academy and the Arundel residents instituted an action against RSU 21 in the Superior Court after RSU 21 decided that all Arundel public middle school students must attend the Middle School of the Kennebunks (MSK) in Kennebunk and that public funds cannot be used for those students to attend Thornton Academy in Saco.  Thornton Academy and the Arundel residents sought a declaratory judgment that RSU 21 incorrectly interpreted and applied 20-A M.R.S. § 1479(3)(A) in making its decision, *see* 14 M.R.S. § 5954 (2018), and they sought review of RSU 21's decision on the same basis pursuant to M.R. Civ. P. 80B.[2]  RSU 21 counterclaimed solely against Thornton Academy, seeking a declaratory judgment that RSU 21 correctly interpreted section 1479(3)(A).

---

[2] Thornton Academy and the Arundel residents also alleged that RSU 21 was equitably estopped from denying middle school students the ability to attend Thornton Academy at public expense based on the Arundel residents' reliance on RSU 21's prior representations in a local referendum. The court granted RSU 21's motion to dismiss the equitable estoppel claim as to Thornton Academy and denied RSU 21's motion to dismiss the equitable estoppel claim as to the Arundel residents.  The court also denied RSU 21's motion to dismiss the M.R. Civ. P. 80B claim.  The parties later agreed to defer consideration of the equitable estoppel count as to the Arundel residents until the declaratory judgment and Rule 80B claims were resolved.  The court eventually dismissed the equitable estoppel claim as moot given its disposition of the other claims.  These decisions are not at issue in this appeal.

[¶3] The court made the following findings of fact based on the parties' stipulated record. In 2006, the Arundel School Department (ASD), with referendum approval, entered into a ten-year contract with Thornton Academy that called for all Arundel students in grades six through eight to attend Thornton Academy. After school reorganization legislation was enacted in 2007, *see* P.L. 2007, ch. 240, § XXXX-13 (effective June 7, 2007), the ASD merged with Maine School Administrative District 71 to form RSU 21, effective July 1, 2009. MSK is in RSU 21. RSU 21 declined to execute a new contract with Thornton Academy and, in March of 2016, three months before the contract expired, RSU 21 adopted a resolution identifying MSK as the only publicly funded middle school and denying the students the ability to attend Thornton Academy at public expense.

[¶4] The court concluded—as to both the declaratory judgment claims and the Rule 80B action—that, pursuant to 20-A M.R.S. § 1479(3)(A), RSU 21 must continue to allow Arundel middle school students to attend Thornton Academy at public expense. The court denied RSU 21's subsequent motion to amend and to reconsider the judgment. *See* M.R. Civ. P. 52(b), 59(e). RSU 21 appeals.

## II. DISCUSSION

[¶5]    RSU 21 challenges the court's interpretation of 20-A M.R.S. § 1479(3)(A) to require RSU 21 to continue to allow Arundel middle school students to attend Thornton Academy at public expense, notwithstanding the expiration of the contract.  We interpret section 1479 de novo as a matter of law, starting with the plain language of the statute as the best indicator of the Legislature's intent.  *See Wawenock, LLC v. Dep't of Transp.*, 2018 ME 83, ¶ 7, 187 A.3d 609; *Me. Sch. Admin. Dist. No. 37 v. Pineo*, 2010 ME 11, ¶ 16, 988 A.2d 987.  Unless the statute itself suggests a contrary legislative intent, we give words in a statute their "plain, common, and ordinary meaning, such as people of common intelligence would usually ascribe to them."  *S.D. Warren Co. v. Bd. of Envtl. Prot.*, 2005 ME 27, ¶ 15, 868 A.2d 210 (quotation marks omitted).  If the plain language is unambiguous, we interpret the statute according to that language alone, "unless the result is illogical or absurd."  *Wawenock, LLC*, 2018 ME 83, ¶ 7, 187 A.3d 609 (quotation marks omitted).  If the language is ambiguous—that is, if it is reasonably susceptible to multiple interpretations— we will consider other indicia of the Legislature's intent in enacting it, including its legislative history.  *Id.* ¶¶ 7, 15.

[¶6]   By constitutional and statutory mandate, every municipality in Maine must provide for a free public education from kindergarten through grade twelve for all children whose parents reside in that municipality. Me. Const. art. VIII, pt. 1, § 1; 20-A M.R.S. §§ 2, 1451, 1479, 5202(2) (2018); *see Sch. Admin. Dist. No. 1 v. Comm'r, Dep't of Educ.*, 659 A.2d 854, 857 (Me. 1995). In light of the geographic limitations on and the financial burdens created by such a requirement, however, the Legislature has long permitted any school district that has no school of its own to satisfy the public education requirement by alternative means—(1) by contracting with a public school in another school district or a private school that meets certain requirements (a school privileges contract), *see* 20-A M.R.S. §§ 2701-2703, 2951, 5203(3), 5204(3) (2018); R.S. ch. 41, § 105 (1954); R.S. ch. 15, § 62 (1903), or (2) by allowing parents to choose another district's public school or an approved private school for their children to attend at public expense in the absence of a school privileges contract (school choice), *see* 20-A M.R.S. §§ 2951, 5203(4), 5204(4) (2018); R.S. ch. 41, § 107 (1954); R.S. ch. 15, § 63 (1903).

6

[¶7]  The statute at issue here—20-A M.R.S. § 1479—has provisions regarding both school privileges contracts and school choice as applied to public educational programming within RSUs:[3]

### § 1479. Program

A regional school unit shall maintain a program that includes kindergarten to grade 12 except for the school administrative districts that did not operate kindergarten to grade 12 that were reformulated into regional school units in accordance with Public Law 2007, chapter 240, Part XXXX, section 36, subsection 12, as amended by Public Law 2007, chapter 668, section 48.

**1. Secondary school.**  A secondary school facility may be operated as a 4-year school, as a 6-year school for grades 7 to 12 or as 2 or more 3-year schools, except that students living in an area remote from a public school may be provided for under section 5204.

**2. Contracts for secondary school programs.**  In addition to the provisions for a secondary school facility set forth in subsection 1, a regional school unit may contract with a nearby regional school unit or with a private school approved for tuition purposes for all or some of its secondary school students. The contract may run from a period of 2 to 10 years. The contract must also comply with section 2703 and may provide for the formation of a joint committee in accordance with section 2704. A regional school unit in which a previous education unit has contracted for secondary school programs is bound by the terms of that contract, unless otherwise negotiated by the parties.

**3. Expiration of contract.**  After July 1, 2008, if a contract between a previous education unit and another previous education

---

[3] An RSU is one of several types of school administrative units (SAUs), each of which is governed by a separate collection of statutes in title 20-A.  *See* 20-A M.R.S. § 1(26) (2018).

unit or a private school approved for tuition purposes expires, and the previous education unit that was the sending unit is a member of a regional school unit under this chapter, the provisions of this subsection apply.

**A.** If the option of attending a public school in another school administrative unit or a private school approved for tuition purposes subject to chapter 219 was available to students in the previous education unit, that option continues to be available to students who reside in the municipalities that composed the previous education unit after the municipality's inclusion in the regional school unit.

**B.** The regional school unit may negotiate a new contract pursuant to chapter 115.

**4. Absence of contract; maintenance of school choice opportunities.** A school administrative unit that neither maintains a school nor contracts for school privileges pursuant to chapter 115 shall continue to pay tuition, in accordance with chapter 219, for a student who resides in the school administrative unit at the public school or the private school approved for tuition purposes of the parent's choice at which the student is accepted, calculated in accordance with subsection 5.

**5. Additional expense.** In a regional school unit where some but not all of the students are attending school pursuant to this section, the sending municipality is responsible for the additional expense as calculated in accordance with this subsection.

**A.** For each secondary school student who attends a public school in another school administrative unit, the sending municipality in a regional school unit is responsible for an amount equal to the difference in tuition in cases when it exceeds the amount of the regional school unit's tuition rate calculated in accordance with section 5805.

8

> **B.** For each secondary school student who attends a private school approved for tuition purposes subject to the provisions of chapter 219, the sending municipality in a regional school unit is responsible for an amount equal to the difference in tuition in cases when it exceeds the amount of the regional school unit's tuition rate calculated in accordance with section 5805.

> Municipalities exercising school choice pursuant to this section are responsible for a local contribution in accordance with section 15688 and the additional expense calculated in accordance with this subsection.

[¶8] The portion of section 1479 that we must interpret is subsection 3, which applies upon the expiration of a previously existing contract between a "previous education unit" and another previous education unit or an approved private school.[4] 20-A M.R.S. § 1479(3). There is no dispute that the ASD was a previous education unit that had a contract with Thornton Academy—an approved private school; that contract expired after July 1, 2008; and the ASD is now part of RSU 21. Subsection 3 therefore applies.

[¶9] Subsection 3(B) states that, upon the expiration of a school privileges contract, the RSU may enter into a new contract. 20-A M.R.S. § 1479(3)(B). Here, RSU 21 elected not to renegotiate the contract with

---

[4] A "[p]revious education unit" is defined as "a state-approved unit of school administration that was responsible for operating or constructing public schools prior to the reorganization of school administrative units pursuant to chapter 103-A." 20-A M.R.S. § 1(20-A) (2018). This definition refers to the school reorganization legislation enacted in 2007, of which section 1479 was a part. P.L. 2007, ch. 240, § XXXX-13 (effective June 7, 2007) (currently codified at 20-A M.R.S. §§ 1451-1512 (2018)).

Thornton Academy.  Subsection 3(A) states that, upon the expiration of a school privileges contract (and presumably in the absence of a renegotiated contract), students continue to enjoy a certain "option" if they have previously enjoyed that option.  20-A M.R.S. § 1479(3)(A).  This appeal turns on precisely what "option" subsection 3(A) preserves.

[¶10]  RSU 21 argues that subsection 3(A) must be narrowly construed so that "option" means only school choice, that is, if students were allowed to select *any* public or approved private school before school reorganization in line with 20-A M.R.S. §§ 5203(4) and 5204(4), those students would continue to have school choice after their previous education unit joined an RSU. Because all Arundel middle school students who wished to receive a publicly supported education were required to attend Thornton Academy pursuant to the ASD's contract with Thornton Academy, RSU 21 asserts, Arundel's students never had school choice.  RSU 21 further asserts that because the students were never afforded an "option"—as in, a choice between at least two alternatives— as subsection 3(A) provides, RSU 21 has no obligation to afford them school choice now that the school privileges contract with Thornton Academy has expired.

10

[¶11] By its plain terms, subsection 3 applies only when a school privileges contract expires. 20-A M.R.S. § 1479(3). Thus, according to RSU 21's interpretation, subsection 3(A) could apply only when the municipality *both* contracted for school privileges *and* the students enjoyed school choice. Based on this reading of the statute, RSU 21 suggests that subsection 3(A) applies only when the expired contract was nonexclusive, i.e., when a school privileges contract allowed for some of an SAU's students to attend a particular school, but other students were afforded school choice.

[¶12] Assuming such arrangements exist and are permitted by statute,[5] RSU 21's proposed interpretation strays far from the plain meaning of section 1479, which contains no language supporting any distinction in result based on the terms of the particular expired contract, whether exclusive or nonexclusive, or otherwise. *See Joyce v. State*, 2008 ME 108, ¶ 11, 951 A.2d 69 ("In determining the plain meaning of words, we will not imply limitations where

---

[5] The statute provides for school choice when an SAU "neither maintains an elementary school nor contracts for elementary school privileges" elsewhere. 20-A M.R.S. § 5203(4) (2018); *see* 20-A M.R.S. § 5204(4) (2018) (stating the same as to secondary schools); *see also* 20-A M.R.S. § 1(10) (2018) (defining "[e]lementary school" to include kindergarten through eighth grade). We express no opinion on whether school privileges contracts and school choice are in any way mutually exclusive. *See* Op. Me. Att'y Gen. (Aug. 29, 1977). We have, however, recognized circumstances in which a school district has contracted with more than one school at a time, such that each contract was nonexclusive given the existence of another contemporaneous contract. *Me. Cent. Inst. v. Inhabitants of Palmyra*, 139 Me. 304, 305, 309, 30 A.2d 541 (1943). In the *Palmyra* decision, we held that because the students were subject to the school privileges contracts, they were not permitted to also exercise school choice. *See id.* at 309-10.

none appear."). Because subsection 3 is meant to address what happens whenever a school privileges contract expires, RSU 21's interpretation also leaves an obvious gap in the statute. Subsection 3(B) allows for the execution of a new contract. Subsection 3(A) addresses what happens when no new contract is executed. If subsection 3(A) applies only upon the expiration of a nonexclusive contract, subsection 3 makes no provision for what happens upon the expiration of an exclusive contract when no new contract is executed.

[¶13] As part of our plain language review, we must also consider section 1479(3)(A) in conjunction with section 1479(4). Subsection 4, entitled, "**Absence of contract; maintenance of school choice opportunities**," states that when an SAU has no school and does not contract for school privileges, the SAU "shall continue to pay tuition, in accordance with chapter 219, for a student who resides in the school administrative unit at the public school or the private school approved for tuition purposes of the parent's choice at which the student is accepted." 20-A M.R.S. § 1479(4). RSU 21 agrees that, by this language, subsection 4 refers to school choice, and it is therefore subsection 4 that allows school choice for students who have enjoyed school choice before. RSU 21's interpretation of subsection 3(A)—by which subsection 3(A) means the same thing—would render either subsection 3(A) or subsection 4 surplusage. This

is a result we cannot abide. *See Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 11, 896 A.2d 271 ("All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed.").

[¶14]  In short, RSU 21's proposed construction derives little support from the plain language of the statute, creates an illogical gap in application, and renders some statutory language surplusage.  We take care to avoid any interpretation that suffers from such infirmities.  *See Wawenock, LLC*, 2018 ME 83, ¶ 7, 187 A.3d 609; *Cobb*, 2006 ME 48, ¶ 11, 896 A.2d 271.

[¶15]  We therefore reject RSU 21's strained reading of the term "option" in favor of the construction suggested by Thornton Academy and the Arundel residents, who urge us to interpret section 1479(3)(A) as the Superior Court did—to apply whenever any school privileges contract expires and is not renewed or renegotiated.  Regardless of whether the school privileges contract gave students a single option of attending a public school in another school district or an approved private school, or a choice between two or more such schools, subsection 3(A) applies to preserve the students' right to attend the former contract school.  By this interpretation, "option" is given its common and ordinary meaning: "opportunity to," "ability to," or "right to."  *See Option*, New Oxford American Dictionary (3d ed. 2010) (defining "option" as "the

freedom, power, or right to choose something"); *S.D. Warren Co.*, 2005 ME 27, ¶ 15, 868 A.2d 210. Because Arundel middle school students had the opportunity to attend Thornton Academy at public expense before the expiration of the contract, the plain language of section 1479(3)(A) requires RSU 21 to provide that option after the expiration of the contract.[6] This construction also fills the lacuna that would be created by RSU 21's interpretation because it covers all of the possibilities existing upon the expiration of the contract, no matter the particular terms of the contract: a new contract can be executed (subsection 3(B)) or the parties may continue with the status quo, this time by operation of law rather than by operation of contract (subsection 3(A)).

[¶16] RSU 21's primary objection to this construction is its far-reaching effect; RSU 21 suggests that, because there is now a public middle school otherwise located within RSU 21, section 1479 should not be interpreted to allow Arundel middle school students to attend Thornton Academy at public expense in perpetuity in the absence of any contractual arrangement to that

---

[6] Because we interpret section 1479(3)(A) to provide the remedy sought by Thornton Academy and the Arundel residents in their declaratory judgment and Rule 80B claims, we conclude that the equitable estoppel claim, which seeks the same remedy, continues to be moot. *See Anthem Health Plans of Me., Inc. v. Superintendent of Ins.*, 2011 ME 48, ¶¶ 5, 7, 18 A.3d 824 (explaining that an issue is moot when "there is no real and substantial controversy" and the decision "would result in no practical effect") (quotation marks omitted).

14

effect. We agree with RSU 21's assertion that section 1479(3) contains no language supporting any temporal limitation on its application, and we acknowledge that the effect may undermine RSU 21's attempt to consolidate the public education of the children living within the RSU. It is for the Legislature, however, to consider such a result from a public policy perspective; we cannot ignore the plain language of the statute based on a dispute about the advisability of the underlying policy decisions. *See Smith v. Hawthorne*, 2006 ME 19, ¶ 42, 892 A.2d 433 (Levy, J., dissenting) ("[T]he Constitution entrusts the exclusive authority for the adoption of statutory law with the Legislature because it is the branch of government best suited to undertake the investigation, fact-finding, and analysis needed to establish policies that account for social interests that are much broader than the narrow, personal interests of the parties to a lawsuit. Accordingly, the Legislature's determination of public policy is binding on the courts so long as it is within constitutional limits.").

The entry is:

Judgment affirmed.

Richard A. Spencer, Esq. (orally), Melissa A. Hewey, Esq., and David M. Kallin, Esq., Drummond Woodsum, Portland, for appellants Regional School Unit 21 and the Board of Regional School Unit 21

Ronald W. Schneider Jr., Esq. (orally), Sara Hellstedt, Esq., and Tara A. Walker, Esq., Bernstein Shur, Portland, for appellees Thornton Academy et al.

York County Superior Court docket number CV-2016-86
FOR CLERK REFERENCE ONLY