MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2021 ME 42
Docket:      Cum-21-212
Argued:      July 21, 2021
Decided:     July 29, 2021

Panel:       STANFILL, C.J., and GORMAN, JABAR, HUMPHREY, and HORTON, JJ.

CHRISTOPHER J. CAIAZZO

v.

SECRETARY OF STATE

HUMPHREY, J.

[¶1]  Christopher J. Caiazzo[1] appeals from a judgment of the Superior Court (Cumberland County, *O'Neil, J.*) affirming the Secretary of State's decision to draft a single ballot question for the direct initiative proposing "An Act To Require Legislative Approval of Certain Transmission Lines, Require Legislative Approval of Certain Transmission Lines and Facilities and Other Projects on Public Reserved Lands and Prohibit the Construction of Certain Transmission Lines in the Upper Kennebec Region."  Caiazzo argues that the Secretary of State is required by statute to prepare a separate question for each of three separate issues addressed by the direct initiative and that the Superior

---

[1]  Although Christopher J. Caiazzo is a member of the Maine House of Representatives, he is participating in this matter as a registered voter in the State of Maine.

2

Court erred in affirming the Secretary of State's decision to write a single ballot question. We affirm the judgment.

## I. BACKGROUND

[¶2] Thomas B. Saviello,[2] an intervenor in this matter, submitted a petition for direct initiative of legislation to the Secretary of State on September 16, 2020. *See* Me. Const. art. IV, pt. 3, § 18; 21-A M.R.S. § 901 (2021). The Secretary of State made changes to the proposed legislation to conform with legislative drafting standards, and Saviello agreed to those changes. 21-A M.R.S. § 901(3-A). The Secretary of State prepared a petition form to be printed and circulated for voter signatures by Saviello. *See id.* § 901(3-A), (3-B).

[¶3] The circulated petition described a single Act proposing multiple statutory amendments. The Act, presented in six sections, would amend 12 M.R.S. § 1852(4) (2021) and 35-A M.R.S. §§ 3131-3132 (2021) to require the approval of the Legislature, by a two-thirds vote, for the Bureau of Parks and Lands to approve leases of public reserved lands for certain uses including the placement of electrical transmission lines, retroactive to September 16, 2014; require legislative approval for the construction of "high-impact electric

---

[2] Although Thomas B. Saviello was once a Maine legislator, he appears in this matter as the applicant for the direct initiative at issue.

transmission lines" and require that certain such lines be approved by a two-thirds vote if they substantially alter public land, retroactive to September 16, 2020; and ban the construction of high-impact electric transmission lines in the "Upper Kennebec Region" as defined in the Act, retroactive to September 16, 2020.

[¶4]  The circulated petition with signatures was submitted for review on January 21, 2021.  *See* Me. Const. art. IV, pt. 3, § 18(1); 21-A M.R.S. § 905(1) (2021).  On February 22, 2021, the Secretary of State determined that the petition was valid and had garnered enough valid signatures.  *See* Me. Const. art. IV, pt. 3, § 18(2); 21-A M.R.S. § 905(1).  No appeal was taken from this determination.  *See* 21-A M.R.S. § 905(2) (2021).

[¶5]  The initiated bill was presented to the 130th Legislature during its first regular session, and the Legislature adjourned *sine die* on March 30, 2021, without enacting the measure.  *See* Me. Const. art. IV, pt. 3, § 18(2).  The Governor issued a proclamation requiring that a referendum on the initiated bill be submitted to the voters on November 2, 2021.  *See* Me. Const. art. IV, pt. 3, § 18(3).

4

[¶6] On April 13, 2021, the Secretary of State released the following proposed language for the ballot question on the initiated bill and sought public comment:

> *Do you want to ban the construction of high-impact electric transmission lines in the Upper Kennebec Region and to require the Legislature to vote on other such projects in Maine retroactive to 2014, with a two-thirds vote required if a project uses public lands?*

21-A M.R.S. § 905-A (2021). More than one hundred comments were received, including from Caiazzo, who suggested that the initiative be split into three separate questions:

> *Do you want to require retroactive to 2014 that the Legislat[ure] approve by a two-thirds vote any lease or conveyance of public reserved lands to be used for transmission lines and facilities, landing strips, pipelines, or railroad tracks?*

> *Do you want to require retroactive to 2020 the Legislature to approve the construction of any high impact transmission lines in Maine, with a two-thirds vote required if a project crosses public lands?*

> *Do you want to ban retroactive to 2020 the construction of high-impact electric transmission lines in the Upper Kennebec Region?*

He argued that any one of these questions, if passed, would satisfy the underlying goal of the initiated bill to impede the construction of the New England Clean Energy Connect project.

[¶7]   The Secretary of State released the final wording for the question on May 24, 2021:

> Do you want to ban the construction of high-impact electric transmission lines in the Upper Kennebec Region and to require the Legislature to approve all other such projects anywhere in Maine, both retroactively to 2020, and to require the Legislature, retroactively to 2014, to approve by a two-thirds vote such projects using public land?

(Quotation marks omitted.)  *See id.*

[¶8]  Caiazzo filed an action in the Superior Court, citing 21-A M.R.S. § 905 (2021), 5 M.R.S. § 11001 (2021), and M.R. Civ. P. 80C as the sources of authority for his appeal.  He alleged that the Secretary of State erred by failing to draft three separate questions as he had suggested in his public comment.  The Superior Court accepted briefs from the parties and from Saviello, who urged the court to affirm the Secretary of State's decision.  The court held that, because Caiazzo was not challenging "whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to that voter's wishes," 21-A M.R.S. § 905(2), the court would "proceed under a M.R. Civ. P. 80C standard, as provided by § 905(2)."

[¶9]   The court then concluded that, based on the plain language of 21-A M.R.S. § 906(6)(A) (2021), read in context, the Secretary of State was

required only to "advise petitioners" of "the proper suggested format for an initiative question," *id.*, including the presentation of separate questions for separate issues, and was not required to reframe the amendments proposed in the initiated bill as separate questions for submission to the voters. Caiazzo appeals to us from this judgment. We issued an order establishing the course of the appeal based on the timing requisites of 21-A M.R.S. § 905(3). Having received briefs and held oral argument, we now decide the appeal.

## II. DISCUSSION

A.     Statutory Authority to Consider the Appeal

[¶10] We begin by addressing the source of our authority to consider this appeal. The Superior Court treated the appeal to it as an appeal brought in part pursuant to 21-A M.R.S. § 905—the statute governing "[r]eview of initiative and referendum petitions." That statute requires a determination of "the validity of the petition" by the Secretary of State, and allows review by the Superior Court, and appeal to us:

> **1. Secretary of State.** The Secretary of State shall review all petitions filed in the Department of the Secretary of State for a people's veto referendum under the Constitution of Maine, Article IV, Part Third, Section 17, or for a direct initiative under the Constitution of Maine, Article IV, Part Third, Section 18.
>
> The Secretary of State shall determine the validity of the petition and issue a written decision stating the reasons for the decision

within 30 days from the date of filing of a written petition in the Department of the Secretary of State under the Constitution of Maine, Article IV, Part Third, Section 17 or 18.

The Secretary of State may invalidate a petition if the Secretary of State is unable to verify the notarization of that petition.

**2. Superior Court.** Any voter named in the application under section 901, or any person who has validly signed the petitions, if these petitions are determined to be invalid, or any other voter, if these petitions are determined to be valid, may appeal the decision of the Secretary of State by commencing an action in the Superior Court. This action must be conducted in accordance with the Maine Rules of Civil Procedure, Rule 80C, except as modified by this section. In reviewing the decision of the Secretary of State, the court shall determine whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to that voter's wishes. This action must be commenced within 10 days of the date of the decision of the Secretary of State. Upon timely application, anyone may intervene in this action when the applicant claims an interest relating to the subject matter of the petitions, unless the applicant's interest is adequately represented by existing parties. The court shall issue its written decision containing its findings of fact and stating the reasons for its decision within 40 days of the date of the decision of the Secretary of State.

**3. Supreme Judicial Court.** Any aggrieved party may appeal the decision of the Superior Court, on questions of law, by filing a notice of appeal within 3 days of that decision. The appellant must file the required number of copies of the record with the clerk within 3 days after filing notice of appeal. After a notice of appeal is filed, the parties have 10 days to file briefs with the clerk of courts. As soon as the record and briefs have been filed, the court shall immediately consider the case. The standard of review shall be the same as for the Superior Court. The court shall

issue its decision within 30 days of the date of the decision of the Superior Court.

21-A M.R.S. § 905.

[¶11] Before 2007, the ballot question drafted by the Secretary of State was part of the petition and was therefore subject to the Superior Court's and our review pursuant to section 905. *See* P.L. 1983, ch. 410 (effective Sept. 23, 1983) (enacting the predecessor to 21-A M.R.S. § 901(4): "The ballot question for initiative and people's veto referenda shall be drafted by the Secretary of State . . . . The question shall be conspicuously displayed on the face of the petition."); *see, e.g.*, *Olson v. Sec'y of State*, 1997 ME 30, ¶ 4, 689 A.2d 605 (holding that we would "independently determine whether the ballot question is understandable and not misleading" pursuant to section 905 when, under the law in place at that time, the question was part of the petition); *Wagner v. Sec'y of State*, 663 A.2d 564, 568 (Me. 1995) (reviewing whether an initiative question's language was materially misleading when, under the law in place at that time, the question was part of the petition). Because the question was present on the face of a circulating petition during that time, section 906(6) was implicated in the review that the courts undertook pursuant to section 905. *See Olson*, 1997 ME 30, ¶ 6, 689 A.2d 605. When the ballot question was part of the circulating petition, the review authorized by section 905 allowed any voter

other than the applicant and valid signers of the petition to challenge the validity of the petition itself and, beginning in 1987, to ask for court review of "whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to that voter's wishes." 21-A M.R.S. § 905(2); *see* P.L. 1987, ch. 119, § 1 (effective Sept. 29, 1987).

[¶12]  Since 2007, however, the ballot question is not included in a circulating petition. *See* P.L. 2007, ch. 234, §§ 2, 6 (effective Sept. 20, 2007) (codified at 21-A M.R.S. §§ 901(4), 905-A). The Secretary of State drafts the ballot question only after the petition has been validated, the initiated bill has been presented to the Legislature, and the Legislature has adjourned *sine die* without adopting the legislation. *See* 21-A M.R.S. §§ 901(4), 905-A.

[¶13] Here, in accordance with this statutory procedure, the Secretary of State determined *only* the validity of the *petition*—with no review of the ballot question—in February 2021, *see* 21-A M.R.S. § 905(1), and that decision was not appealed to the Superior Court or to us, *see id.* § 905(2), (3).

[¶14]  The current version of these statutes permits only the petition's applicants to seek judicial review of the Secretary of State's drafting of the ballot

question—an event that now occurs well after the petition and signatures have been determined to be valid under section 905(1). *Cf.* 21-A M.R.S. § 901(7) (authorizing a "voter named in the application" to "appeal any decision made by the Secretary of State under . . . section [901] using the procedures for court review provided for in section 905, subsections 2 and 3"); *id.* § 901(4) (summarizing the process for the Secretary of State to write a ballot question in accordance with section 906 and submit it for public comment pursuant to section 905-A). Because Caiazzo is not a "voter named in the application," section 905 does not apply to this appeal. 21-A M.R.S. § 901(7).

[¶15] Rather, Caiazzo's is an ordinary appeal from the final action of a state agent, brought to us pursuant to 5 M.R.S. § 11008 (2021) and M.R. Civ. P. 80C. This appeal is not, therefore, subject to the standard of review or to the expedited schedule for court decision-making set forth in section 905(2) and (3). *Cf. Olson*, 1997 ME 30, ¶ 4, 689 A.2d 605 (applying section 905 in reviewing a question that appeared on the face of a petition). We nonetheless decide the appeal on an expedited basis because all parties have briefed the issues, we have heard oral arguments, the matter is ready for our consideration, and the issuance of a timely opinion is appropriate given the need for the

question to be printed and presented to the voters on the November 2021 ballot.

B.    Review of the Secretary of State's Decision

[¶16]  When the Superior Court acts in its appellate capacity in reviewing the Secretary of State's final action, "we review directly the Secretary of State's decision for errors of law, findings not supported by the evidence, or an abuse of discretion."  *Reed v. Sec'y of State*, 2020 ME 57, ¶ 12, 232 A.3d 202.  To determine whether the Secretary of State satisfied the dictates of 21-A M.R.S. § 906(6)(A), we interpret the statute "de novo as a matter of law to give effect to the intent of the Legislature, first by examining its plain language." *Reed*, 2020 ME 57, ¶ 14, 232 A.3d 202 (quotation marks omitted).  We interpret the statute according to its unambiguous meaning if the plain language is not "reasonably susceptible to different interpretations."  *Id.* (quotation marks omitted).  In interpreting the plain language of a statute, we view the statute in the context of the entire statutory scheme to achieve a harmonious result. *Me. Green Party v. Sec'y of State*, 1997 ME 175, ¶ 6, 698 A.2d 516.

[¶17]  "The Secretary of State is the constitutional officer entrusted with administering—and having expertise in—the laws pertaining to the direct initiative process."  *Reed*, 2020 ME 57, ¶ 18, 232 A.3d 202 (citing Me. Const.

12

art. IV, pt. 3, § 18).  Thus, if there is any ambiguity, we will defer to the Secretary

of State's reasonable interpretation of the statute.  *See id.*

[¶18]  As it applies here, the statute that we must interpret requires the

Secretary of State to (A) advise petitioners for a direct initiative of the proper

suggested format for submitting initiative questions—a format that calls for

dividing separate issues into separate questions and (B) write the question in a

clear, concise, and direct manner:

> **Wording of ballots for people's veto and direct initiative referenda.**  Ballots for a statewide vote on a people's veto referendum or a direct initiative must set out the question or questions to be voted on as set forth in this subsection.
>
>> **A.** The Secretary of State shall advise petitioners that the proper suggested format for an initiative question is a separate question for each issue.  In determining whether there is more than one issue, each requiring a separate question, considerations include whether:
>>
>>> **(1)** A voter would reasonably have different opinions on the different issues;
>>>
>>> **(2)** Having more than one question would help voters to better understand the subject matter; and
>>>
>>> **(3)** The questions are severable and can be enacted or rejected separately without negating the intent of the petitioners.
>>
>> **B.** The Secretary of State shall write the question in a clear, concise and direct manner that describes the subject matter

of the people's veto or direct initiative as simply as is possible.

21-A M.R.S. § 906(6) (2021); *see also* Me. Const. art. IV, pt. 3, § 20 ("[T]he Secretary of State shall prepare the ballots in such form as to present the question or questions concisely and intelligibly.").

[¶19] These requirements of subsection 6 were enacted in 1993, *see* P.L. 1993, ch. 352, § 3 (effective Oct. 13, 1993), at a time when, unlike now, the ballot question itself circulated as part of the petition form that voters were invited to sign, *see* 21-A M.R.S.A. § 901(4) (Supp. 1993) ("The question must be conspicuously displayed on the face of the petition."). As discussed, in 2007, the Legislature omitted the requirement that the question be included in the circulating petition and provided for the question to be finalized by the Secretary of State *after* the circulation and validation of the petition and a period of public comment. *See* P.L. 2007, ch. 234, §§ 2, 6 (effective Sept. 20, 2007) (codified at 21-A M.R.S. § 905-A). Section 906(6)(A) was not amended at that time.

[¶20] Subsection 6(A) contains no mandatory language requiring the Secretary of State to formulate multiple, separate questions if a petition that has been circulated and validated proposes amendments addressing multiple issues. The language providing that the Secretary of State "*shall* advise

14

petitioners" of the "proper suggested format" does not similarly mandate action by the Secretary of State if "there is more than one issue."  21-A M.R.S. § 906(6)(A) (emphasis added).  Rather, the statute provides a nonexclusive list of "considerations" for "determining whether there is more than one issue, each requiring a separate question," without indicating who makes the determination.  *Id.*

[¶21]  From the language of section 906(6)(A) itself, it is unclear whether the drafter of the petition or its signatories (the petitioners) or the drafter of the question (the Secretary of State) is responsible for determining whether multiple questions must be presented to the voters.  It is also unclear when the advice is to be given.  Thus, to interpret the plain meaning of subsection 6(A), we examine the context in which it appears.  *See Me. Green Party*, 1997 ME 175, ¶ 6, 698 A.2d 516.

[¶22]  Subsection 6(A) is followed directly by a provision that imposes a mandate on the *Legislature* when *it* drafts a question for a statutory referendum that it enacted:

>  **6-A.  Wording of referendum questions enacted by the Legislature.**  The proper format for a statutory referendum enacted by the Legislature is a separate question for each issue.  In determining whether there is more than one issue, each requiring a separate question, considerations include whether:

**A.** A voter would reasonably have different opinions on the different issues;

**B.** Having more than one question would help voters to better understand the subject matter; and

**C.** The Legislature determines the questions are severable and can be enacted or rejected separately without negating the intent of the Legislature.

21-A M.R.S. § 906 (2021). In subsection 6-A, the Legislature establishes that there is a "proper format," 21-A M.R.S. § 906(6-A)—not a "proper *suggested* format," *id.* § 906(6)(A)—for the Legislature's question and explicitly makes the Legislature responsible for determining whether "questions are severable and can be enacted or rejected separately without negating the intent of the Legislature," *id.* § 906(6-A)(C). This subsection was adopted simultaneously with subsection 6(A) and demonstrates that the Legislature understood how to draft mandatory language but chose not to do so for purposes of people's vetoes and direct initiatives. *See* P.L. 1993, ch. 352, §§ 3-4 (effective Oct. 13, 1993).

[¶23] Although there is no express indication of why the Legislature mandated that separate ballot questions be written for separate issues when it enacts a statutory referendum, but did not impose a similar direct mandate on the Secretary of State for a direct initiative or people's veto, the statutory scheme suggests that the difference lies in the distinct roles of the question

drafters. For a referendum enacted by the Legislature, the Legislature is the drafter of both the proposed bill and the ballot question, whereas for a direct initiative, the *petitioner* is the primary drafter of the petition and initiated bill and the *Secretary of State* is the drafter of the ballot question. *See id.* §§ 901(4), 906(6)(B), 906(6-A). The process for a direct initiative also requires that the ballot question be written by the Secretary of State only after a petition has been circulated, validated, and presented to the Legislature, making it difficult for the Secretary of State to conclude at the point of drafting that issues addressed in a single initiated bill "are severable and can be enacted or rejected separately without negating the intent of the petitioners." *Id.* § 906(6)(A)(3).

[¶24] Requiring the Secretary of State to separate provisions of an initiative into multiple questions could infringe on the electors' right of direct initiative because splintering a single bill that was proposed to be presented for a yes-or-no vote into multiple pieces of legislation might be inconsistent with the intent of those who drafted or signed the petition. The Maine Constitution provides that, with certain exceptions not applicable here, "[t]he electors may propose to the Legislature for its consideration *any* bill, resolve or resolution." Me. Const. art. IV, pt. 3, § 18(1) (emphasis added). The Legislature has been understandably cautious in limiting the Secretary of State's authority to

interfere with the intent of the petitioners. *Cf.* 21-A M.R.S. § 906(6)(A)(3) (listing as a consideration whether "questions are severable and can be enacted or rejected separately without negating the intent of the petitioners").

[¶25]  In sum, because subsections 6(A) and (6-A) are worded differently and we construe them to avoid surplusage, we regard as meaningful the Legislature's distinction between the Secretary of State's role in drafting a ballot question for citizen-initiated legislation and the Legislature's own role in drafting a ballot question for a referendum enacted by the Legislature. *See Thornton Acad. v. Reg'l Sch. Unit 21*, 2019 ME 115, ¶ 14, 212 A.3d 340. Reviewing the plain language of subsection 6 in the context of the entire statutory scheme, the Secretary of State's mandates are limited to (A) providing advice to the petitioners about the proper suggested format of the question or questions, and (B) writing "the question in a clear, concise and direct manner that describes the subject matter of the . . . direct initiative as simply as is possible." *Id.* § 906(6)(A), (B).

[¶26]  Although the advice that subsection 6(A) requires might seem irrelevant when, as here, the Secretary of State drafts a single question for a single petition and the petitioner agrees with that approach, the advice required by section 906(6)(A) would be of consequence if the Secretary of State

were to draft multiple questions based on a single circulated petition in carrying out her obligations under sections 901(4) and 906.[3]  In that circumstance, the Secretary of State's advice would place the petitioners on notice of the criteria set forth in section 906(6)(A) so that the petitioners could, during the period for public comment, offer meaningful opposition to the Secretary of State's draft based on established statutory criteria.  *See id.* § 905-A.  Here, however, there is no argument that any error arises from a failure to give advice, and the question that remains is whether the Secretary of State, by drafting a single question, failed to present the question in a "clear, concise and direct manner."  *Id.* § 906(6)(B); *see also* Me. Const. art. IV, pt. 3, § 20 (requiring that the Secretary of State present ballot questions "concisely and intelligibly").

[¶27]  As drafted, Saviello's initiated bill presents a set of amendments aimed at the stated, but compound, purpose to "Require Legislative Approval of Certain Transmission Lines, Require Legislative Approval of Certain Transmission Lines and Facilities and Other Projects on Public Reserved Lands

---

[3]  Caiazzo suggests that the Secretary must advise the petitioner about the format for the *ballot question* before the *petition* is approved to circulate.  Although the statutes impose no such timing requirement, this timing would provide the petitioner the best opportunity to consider whether to redraft or restructure the proposed petition.  *Compare* 21-A M.R.S. § 901(3-A) (2021) (requiring the Secretary of State to review the *proposed law* for proper form) *with* 21-A M.R.S. § 901(4) (2021) (requiring the Secretary of State to draft a ballot question in accordance with section 906 *after* a petition has gathered a sufficient number of signatures through circulation).

*and* Prohibit the Construction of Certain Transmission Lines in the Upper Kennebec Region." (Emphasis added.) The Secretary of State did not abuse her discretion in reading the initiated bill in the conjunctive and drafting a single, concise ballot question describing the single Act that was circulated to the voters for signature and presented to the Legislature for enactment before being referred to referendum. Although a situation may arise in which the Secretary of State cannot draft a "clear, concise and direct" question without severing voluminous or unrelated issues raised in an initiative's proposed amendments into separate questions, given the standard of review, we cannot say that the Secretary of State erred or abused her discretion in writing a single question in this instance. 21-A M.R.S. § 906(6)(B); *see* Me. Const. art. IV, pt. 3, § 20.

The entry is:

Judgment affirmed

---

Jared S. des Rosiers, Esq., Joshua D. Dunlap, Esq. (orally), Newell A. Augur, Esq., and Matthew O. Altieri, Esq., Pierce Atwood LLP, Portland, for appellant Christopher J. Caiazzo

Aaron M. Frey, Attorney General, and Jonathan R. Bolton, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Secretary of State

Adam R. Cote, Esq., Jeana M. McCormick, Esq. (orally), and Sara P. Cressey, Esq., Drummond Woodsum, Portland, for appellee Thomas B. Saviello

20

Cumberland County Superior Court docket number AP-2021-13
FOR CLERK REFERENCE ONLY